UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| ROBERT C. MILLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:12-cv-64-RLY-WGH |
| | ) | |
| COMMUNITY ACTION PROGRAM OF | ) | |
| EVANSVILLE AND VANDERBURGH | ) | |
| COUNTY, | ) | |
| ALICE  WEATHERS, individually and | ) | |
| in her representative capacity, | ) | |
| DONNA  NEWMAN, individually and in | ) | |
| her representative capacity, | ) | |
| JANET  JOHNSON, individually and in | ) | |
| her representative capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON PLAINTIFF'S MOTION TO COMPEL**

Plaintiff, Robert C. Mills, moves to compel production of e-mails claimed
as privileged by Defendants Community Action Program of Evansville ("CAPE"),
Alice Weather, Donna Newman, and Janet Johnson.  (Docket No. 74).   The
motion is fully briefed,[1] and the court **GRANTS, in part,** and **DENIES, in part,**
Mills's motion.

---

[1] The Court notes that Mills submitted his initial brief only after Defendants noted the
omission (Docket No. 94; Defendants' Response at 5) and that Mills's reply to
Defendants' Surreply (Docket No. 102) exceeded the scope of the motion and the
permissible length for reply briefs.  S.D. IND. L.R. 7.1(e)(1).  The court, mindful that
Mills is proceeding pro se, declines to strike either brief.  However, the court does not
consider any material in the reply brief extraneous to the present motion to compel.

## I.  Background

Mills had served as CAPE's Manager of Children's Services from November 2007 until he was terminated on August 5, 2010.  (Amended Complaint ¶¶ 8, 14).  On May 10, 2011, Mills filed charges against the Defendants with the Evansville-Vanderburgh County Human Relations Commission and the Equal Employment Opportunity Commission.  The EEOC issued a denial letter and Notice of Right to Sue on January 18, 2012, and Mills filed his initial Complaint in Vanderburgh County Superior Court on April 10, 2012.  (*Id.* ¶¶ 17-18).  Defendants removed the case to this court on May 9, 2012.  (Docket No. 1).  In Count I of his Amended Complaint, Mills alleged sex discrimination in violation of Title VII of the Civil Rights Act of 1964.  He accused the Defendants of "treating him less favorably . . . than similarly-situated female employees" (Amended Complaint ¶ 82) and subjecting him to "pretextual, discriminatory performance evaluations and loss of employment." (*Id.* ¶ 83).  He made identical allegations in Counts II, III, and IV, in which he alleged that Defendants violated the Equal Protection Clause of the Fourteenth Amendment, the Head Start Act, and Title IX of the Education Amendment Act of 1972, respectively.  In Count V, he accused Defendants of breaching "the implied covenant of good faith and fair dealing by their sex discrimination tactics and their repeated pretextual actions."  (*Id.* ¶ 125).

In late 2012, Mills served his Second Amended Discovery Demand on Defendants.  (Plaintiff's Motion to Compel ¶ 4).  Defendants answered most of the Demand on December 28, 2012, and January 3 and 4, 2013, and on

January 18, 2013, sent Mills a privilege log of 81 e-mails dated between May 31, 2011, and November 7, 2012.  (Defendants' Response at 2).  Defendants claimed attorney work-product privilege in all 81 e-mails and attorney-client privilege in e-mails 1-65 and 67-72.  (Plaintiff's Ex. B).  On January 29, 2013, Mills filed this motion to compel the release of all 81 e-mails.

## II.    Legal Standards

Federal Rule of Civil Procedure 26 requires parties to engage in broad, open discovery, as "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  FED. R. CIV. P. 26(b)(1).  However, materials protected by either attorney-client or attorney work-product privilege are shielded from discovery.   The privilege categories are related but distinct, and work-product privilege is broader than attorney-client.  *U.S. v. Nobles*, 422 U.S. 225, 238 n.11, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975) (citation omitted).

The attorney-client privilege "protects communications made in confidence by a client and client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice."  *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) (citations omitted).  The privilege belongs to the client, although an attorney may raise it on a client's behalf.  *Id.*  To qualify for the privilege, the court must determine:  (1) whether legal advice was sought from an attorney in her capacity as an attorney; and (2) whether any communications between the client and her attorney or attorney's

3

agent were germane to that purpose and made confidentially.  *Id.* (citing *U.S. v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997)).

Work-product privilege protects "**(1)** documents and tangible things that are **(2)** prepared in anticipation of litigation or for trial **(3)** by or for another party or its representative." FED. R. CIV. P. 26(b)(3)(A) (emphasis added).  The purpose is to protect an attorney's thought processes and mental processes and to avoid allowing a less diligent attorney to piggyback on the adverse attorney's trial preparation.  *Sandra T. E.*, 600 F.3d at 622.  Nonetheless, these materials may be discovered if they fall within Rule 26(b)(1)'s scope, the party has substantial need for the documents, and the party cannot otherwise obtain their substantial equivalents without undue hardship.  FED. R. CIV. P. 26(b)(3)(A)(i-ii).  If disclosure is mandated, any attorney mental impressions must be redacted from the materials before they are given to the adverse party.  *Id.* at 26(b)(3)(B).

## III.   Discussion

### A. General Objections

Mills objects to all the e-mails on the following grounds:  (1) there was no information in the privilege log to determine whether they were really sent in preparation for the litigation; (2) there is no indication that the e-mails were sent for the purpose of requesting or receiving advice from Defendants' attorney; and (3) Torey Suggs, the CAPE HR director and sender or recipient of all e-mails except 66-67 and 70, is not a party to the litigation.  (*See* Plaintiff's Brief at 2).

**B. E-mails 1-63, 66-67, 73-77, 80-81**

**1. Description and Parties' Positions**

Mills adds no additional objections for e-mails 1-63.  For 66-67, he claims that an attorney-client relationship does not exist for Sandra Thompson, a non-party CAPE employee, and that the e-mails "may seek to delete or hide certain payroll records of [Mills]."  (Plaintiff's Brief at 3).  For 73-77 and 80-81, sent on August 15, 2012, and November 7, 2012, respectively, he notes that Newman was listed as the sender of the e-mails despite Newman dying on August 11, 2012.  (*Id.* at 5).  Since someone besides Newman, presumably a non-client, sent the e-mails, he argues they cannot be privileged.

Defendants respond that their attorney, Kristopher Kazmierczak, asked Newman to compile and send e-mails 1-63 to Suggs on May 31, 2011, to help prepare their defense of Newman's recently-filed EEOC Charge.  (Defendants' Response at 3).  E-mails 66 and 67, sent May 1, 2012, were an exchange between Weathers and Thompson containing Kazmierczak's advice "concerning records created in preparation of Defendants' defense" of this lawsuit  (*Id.*)  Another CAPE employee, again at Kazmierczak's request, compiled and sent e-mails 73-77 and 80-81 to Suggs to prepare for the present litigation.  (Defendants' Surreply at 2).  Similar descriptions are contained in the privilege log.  (Plaintiff's Ex. B).  Defendants claim that Mills is already in possession of the substantive content of the e-mails; they only claim privilege in the forwarded communications sent by Newman (and the second CAPE employee) to Kazmierczak.

5

### 2. Analysis

The court is not persuaded by Mills's argument.  Mills offers no evidence
to rebut Defendants' assertion that Newman and the second CAPE employee
were providing Kazmierczak, via Suggs, documents he needed to adequately
represent Defendants.  E-mails 1-63 were sent less than one month after Mills
filed his EEOC charge, and e-mails 66-67, 73-77, and 80-81 were sent after
Mills filed the present lawsuit.  The timing suggests they were prepared in
anticipation of litigation.  The forwarded portion of e-mails may be protected by
work-product privilege, even though the e-mails were first sent to a non-party
intermediary and the underlying content of the e-mails is not protected.  *See*
*Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill. 2007).  Since these were
compiled by a party at the direction of Kazmierczak in preparation for defense
of the EEOC charge and lawsuit, and a party or its agent was the sender or
recipient of each e-mail, the forwarded portions clearly fall within the work-
product privilege.

Moreover, Mills has not shown that he has substantial need for the
forwarded e-mails.  He is already in possession of the underlying substance of
the e-mails.  For e-mails 1-63, 73-77, and 80-81, he has not claimed that the
forwarded content is essential for the prosecution of his claim, besides claiming
that they are necessary for impeachment purposes.  However, as Defendants
note, courts are loath to allow discovery of work product solely for
impeachment purposes.  (Defendants' Response at 12 (citing *Sandra T.E.*, 600
F.3d at 622)).  For e-mails 66-67, Mills has offered no support for his theory

that the e-mails were part of a plan to delete his payroll records.  Mills's motion
is therefore denied for e-mails 1-63, 66-67, 73-77, and 80-81.

### C. E-mails 64-65

#### 1. Description and Parties' Positions

E-mail 64 was sent by Weather to Suggs, Newman, and Diana Brinegar,
a non-party CAPE employee, on May 31, 2011, and e-mail 65 was sent by
Suggs to Newman the next day.  (Plaintiff's Ex. B at 5).  Defendants argue that
these e-mails concerned "advice in response to specific questions from
Defendants to their counsel.  The purpose . . . was to gather the input from
Defendants' counsel or from CAPE and its employees and provide such
information in confidence."  (Defendants' Response at 9).  They further claim
that the e-mails only exist because they were in anticipation of this lawsuit,
and divulging their contents would reveal attorney and clients' mental
impressions.  (*Id.*; *see also* Plaintiff's Ex. B at 5).  Plaintiff counters that any
privilege for e-mail 64 was waived when it was sent to Brinegar, and privilege
for e-mail 65 was waived when it was sent by Suggs before an attorney-client
relationship was established for non-party witnesses.  (Plaintiff's Brief at 3).

#### 2. Analysis

Neither Kazmierczak nor his representative was a sender or recipient of
these e-mails.  The court thus cannot determine whether these e-mails were
truly gathering information for Kazmierczak in response to an inquiry or
disseminating his legal advice to other parties.  If the e-mails do show such a
purpose, and show that their subject matter concerns litigation, the court will

7

find they are protected under both attorney-client and work-product privileges.
The court therefore requires *in camera* inspection of e-mails 64 and 65.

### D. E-mails 68-72

#### 1. Descriptions and Parties' Positions

E-mails 68 and 69-71, sent on May 17 and 24, 2012, respectively, are the dissemination of Kazmierczak's legal advice by Weathers or Suggs to CAPE employees in preparation for defense of this suit. (Defendants' Response 4, 9; Plaintiffs' Ex. B at 5-6). E-mail 72, sent July 12, 2012, pertained to obtaining a document requested by Kazmierczak to help prepare their defense. (Plaintiff's Ex. B at 6). Defendants claim that Kazmierczak was referenced by name in these e-mails and was copied on e-mail 71 to inform CAPE employees that he was representing the organization. (Defendants' Response at 4). Plaintiff claims e-mails 68-71 are not privileged because some or all of the recipients were non-parties, and an attorney-client relationship did not exist for witnesses at the time the e-mails were sent. (Plaintiff's Brief at 4). He claims any privilege in e-mail 72 was waived because, like e-mail 64, Diana Brinegar was a sender and recipient.

#### 2. Analysis

E-mails 68-71 were sent within two weeks of Mills filing this action, with Weathers as either sender or recipient of all e-mails, and they are described as communicating directions from Kazmierczak in preparation for litigation. Given the dates and subject matter descriptions of the e-mails, the court is persuaded that the information was being communicated to and from the

attorney in preparation for defending this suit. Thus, they qualify for work product protection; simply because Kazmierczak is not listed as a sender or recipient does not mean the privilege has been waived. *Caremark, Inc. v. Affiliated Computer Servs.*, 195 F.R.D. 610, 615 (N.D. Ill. 2000) ("whether a document is protected depends on the motivation behind its preparation, rather than on the person who prepares it"). The purpose of e-mail 72 was to obtain a document for Kazmierczak to prepare his defense. This, too, falls under work product, and any waiver of attorney-client privilege by non-clients being listed as senders or recipients is irrelevant.

### E. E-mails 78-79

E-mail 78 was sent by Carol Compton, CAPE secretary, to Suggs and Weathers. Defendants claim that the e-mail was at Kazmierczak's request to gather discovery-related records. E-mail 79 was sent from Johnson to Weathers so that Weathers could compile Defendants' assessment of certain facts. This was also at Kazmierczak's request. (Defendants' Response at 5). Mills objects because Kazmierczak is not the sender or recipient and the descriptions in the privilege log provide no evidence that the e-mails are actually work product. (Plaintiff's Brief at 6).

Much like e-mails 68-72, the subject matter descriptions (Plaintiff's Ex. B at 6) suggest that these e-mails were to compile information so Kazmierczak could prepare the defense. The court therefore finds that these documents are protected as work product.

**F. Substantial Need for Documents 64-65, 68-72, 78-79**

Mills alleges that he needs these, and other, e-mails because they "will likely lead to the discovery of impeachable activities and show the extent to which the Defendants are willing to go to hide, fabricate, or delete evidence." (Plaintiff's Brief at 14). As discussed *supra*, courts generally do not compel discovery of work product solely for impeachment purposes. *Sandra T.E.*, 600 F.3d at 622. Mills has not alleged any other substantial need for the documents. Moreover, since these e-mails are conveying information from Kazmierczak or assembling materials at Kazmierczak's request, they contain the mental impressions of the client or the attorney. Since Mills has not demonstrated substantial need for these documents, he may not discover them.[2]

**G. Auxiliary Issues**

Mills raised several issues in his briefs that the court believes merit comment. Defendants had received until December 31, 2012, to reply to Plaintiff's Second Amended Discovery Demand (Docket No. 51), and they provided their privilege log to Mills on January 18, 2013. Mills claims that Defendants may have waived privilege by waiting more than four months after his initial discovery demand on September 7, 2012, to provide the privilege log. (Plaintiff's Brief at 10). While Defendants may have delayed providing the privilege log to Mills, Mills has not shown that he was prejudiced by this delay.

---

[2] Assuming that *in camera* inspection shows that e-mails 64-65 properly qualify as work product.

Moreover, Defendants were less than three weeks late from the December 31, 2012 deadline imposed by the court.  Waiver of work-product privilege is a serious sanction and not appropriate for a non-prejudicial delay with no prior warning by the court to Defendants' counsel.

Mills argues that by Defendants failing to identify the e-mails as confidential and sending them to non-parties, they have waived attorney-client privilege.  (*Id.*)  Since the court finds the e-mails to be protected by work-product privilege, Mills's argument has no bearing on the outcome of the motion.  He further claims that Defendants violated Federal Rule 26(b)(5)(A)(ii) by failing to supply information for Mills to determine whether the e-mail strings were properly logged and assure Mills that all unlogged e-mail strings were provided without redaction.  (*Id.* at 11 (citations omitted)).  The court relies on the ethical constraints placed on Defendants' counsel to ensure that the discovery materials provided to Mills are complete and accurate.  Absent any evidence to the contrary, the court must rely on Defendants' counsel's representations of completeness and accuracy.

Mills further alleges that the privilege log was inadequate and in improper form.  He claims that the log did not contain job titles of senders and recipients, a description of the document, the document's subject matter, or enough information to evaluate their claim of privilege.  As a result, all

documents should be discoverable.  (*Id.* at 12-13 (citing *Jones v. Hamilton Co. Sheriff's Dep't*, 2003 WL 21383332, at *4 (S.D. Ind. 2003)).[3]  However, Mills's reading of *Jones* is inaccurate.  *Jones* does not require a privilege log to be in a particular format—a log must merely have enough information for the court and Mills to determine whether attorney-client or work-product privilege applies.  *Jones*, 2003 WL 21383332, at *4 (citations omitted).  The privilege log descriptions of the e-mails were more extensive than descriptions commonly cited as deficient,[4] and the court was properly able to discern that they were subject to work-product privilege.  Thus, the log was adequate, and discovery of the e-mails is inappropriate.

Finally, Mills alleges for the first time in his reply brief that Defendants failed to properly respond or object to Mills's motion.  He further claims that Defendants' responses have been in improper, unsearchable format.  (Plaintiff's Reply 3-4, 7-8).  Because these allegations are beyond the scope of Mills's motion to compel, the court does not address them.  The court notes that, to the extent Mills raised these complaints in his separate motion to compel (Docket No. 72), the court will address them in its ruling on that motion.  To the extent these complaints are not raised in either motion, Mills must file another motion to compel.

---

[3] The court notes that the unpublished opinion in *Jones* is not binding precedent on this court; it does not, as Mills claims, speak for this district.  (Plaintiff's Brief at 13).

[4] *See Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992) (e.g., "letter re claim," "analysis of claim," or "report in anticipation of litigation").

## IV.    Conclusion

For the foregoing reasons, Plaintiff's Motion to Compel Release of All E-mails Identified in Defendants' Privilege Log to Plaintiff is **DENIED for all e-mails except for 64 and 65.**  Defendants must submit those e-mails to the Magistrate Judge within ten (10) days for *in camera* review.

**SO ORDERED.**

**Dated:**  April 19, 2013

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Served electronically on all ECF-registered counsel of record.**

**Served via first-class U.S. Mail:**

ROBERT MILLS
2934 Cottage Drive
Evansville, IN  47711